```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUAN LUIS VILLA DELGADO         :      CIVIL ACTION
                                :
          v.                    :
                                :
WARDEN OF THE FEDERAL           :      NO. 26-158
DETENTION CENTER PHILADELPHIA,  :
et al.                          :
```

MEMORANDUM

Bartle, J.                                         January 29, 2026

On January 10, 2026, Juan Luis Villa Delgado filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He challenges the lawfulness of his detention at the Philadelphia Federal Detention Center by Immigration and Customs Enforcement ("ICE"). The Respondents are: the Warden of the Philadelphia Federal Detention Center; Michael Rose, acting Director of the Philadelphia Field Office of ICE's Enforcement and Removal Operations; Todd Lyons, the acting Director of ICE; Kristi Noem, the Secretary of the Department of Homeland Security; and Pamela Bondi, the Attorney General of the United States. All individuals are sued in their official capacities.

Petitioner asks this court to issue a writ of habeas corpus requiring that Respondents immediately release him and a declaration that his mandatory detention is unlawful.

I

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the

United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  As stated by the Supreme Court in Preiser v. Rodriguez, 411 U.S. 475, 484 (1973), "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Id.  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  It is a core remedy for unlawful executive detention that is regularly invoked on behalf of noncitizens. Munaf v. Geren, 553 U.S. 674, 693 (2008); St. Cyr, 533 U.S. at 305.  When reviewing the legality of executive detention, its protections have been the strongest. St. Cyr, 533 U.S. at 301.  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

                              II

     Petitioner is a 33-year-old citizen of the Dominican Republic.  He entered the United States near the Texas-Mexico border on December 3, 2022.  Officials from Customs and Border Patrol apprehended him on arrival and charged him with being an inadmissible alien presumably under 8 U.S.C. § 1182(a)(6)(A)(i) because he entered the country without inspection.  That provision states that an alien present in the United States

without being previously admitted or paroled is ineligible to be admitted to the United States.  The Department of Homeland released him on parole into the United States pursuant to 8 U.S.C. § 1182(d)(5).  Section 1182(d)(5) allows for discretionary parole into the United States "under such conditions as [the Department of Homeland Security] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).  As a condition of his parole, Petitioner was required to report to the ICE office near his final destination within sixty days or face removal from the United States.  He was later scheduled for regular ICE check-ins.

Petitioner has resided in the United States since December 4, 2022.  Up until his recent detention, he lived in Philadelphia.  He married a lawful permanent resident on December 20, 2023.

Petitioner filed an application for asylum in September 2024.  His application is based on his fear of persecution in his home country after repeated police harassment, arbitrary detention and the murder of his sister.  His wife also filed a family-based petition on his behalf in February 2024.  He maintains that he has no criminal record in the United States or anywhere else in the world.

On or about January 8, 2026, Petitioner attended a scheduled ICE check-in when he was arrested by ICE officers. He was transferred to the Federal Detention Center in Philadelphia where he is currently detained. Once in custody, his detention was continued without an opportunity to post bond or be released on other conditions.

ICE took the action it did based on its new policy position that non-citizens residing in the interior of the United States are subject to 8 U.S.C. § 1225(b)(2)(A) proceedings. Section 1225(b)(2)(A) provides: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." Id. § 1225(b)(2)(A). Those detained pursuant to § 1225(b)(2)(A) are not entitled to a bond hearing before an immigration judge during their removal proceedings. Jennings v. Rodriguez, 583 U.S. 281, 288 (2018). Respondents take the position that Villa Delgado is subject to mandatory detention as a result of the Board of Immigration Appeals decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).

Petitioner argues that Matter of Yajure Hurtado is contrary to law and that the government has unlawfully determined that he was subject to mandatory detention. He

4

argues that § 1225(b)(2)(A) does not apply to individuals like himself who are already in the country pending the outcome of removal proceedings.  Instead, he maintains he is subject to proceedings under 8 U.S.C. § 1226(a).  Under § 1226(a), "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . .  [P]ending such a decision, the [alien] . . . may [be] release[d] . . . on bond . . . or . . . [on] conditional parole."  8 U.S.C. § 1226(a)(2).

### III

In recent months, district courts throughout the country have addressed the issues raised by Petitioner in this case repeatedly and exhaustively and granted habeas relief.  See Kobilov v. O'Neill, No. 26-58, 2026 WL 73475, at *2 (E.D. Pa. Jan. 8, 2026) (Rufe, J.).  As the undersign has previously noted, there appears to have been hundreds of decisions overall.  Sharapov v. O'Neill, No. 26-38, 2026 WL 146668, at *2 (E.D. Pa. Jan. 20, 2026).  As respondents have noted, this figure includes over 100 decisions in the Eastern District of Pennsylvania.  See Arijos Tapuy v. Jamison, No. 26-294, 2026 WL 210287, at *2 (E.D. Pa. Jan. 27, 2026).  In four of these cases, the undersigned previously granted similar habeas petitions.  See Lara Nunez v. McShane, No. 26-40, 2026 WL 184195, at *4 (E.D. Pa. Jan. 22, 2026); Sharapov, 2026 WL 146668, at *4; Garcia-Zamora v.

Case 2:26-cv-00158-HB   Document 10   Filed 01/29/26   Page 6 of 10

Jamison, No. 25-6656, 2025 WL 3642088, at *4 (E.D. Pa. Dec. 16, 2025); Anirudh v. McShane, No. 25-6458, 2025 WL 3527528, at *6 (E.D. Pa. Dec. 9, 2025).  The court incorporates by reference its Memoranda in these cases.

The government invokes the same procedural arguments here as it did in Anirudh, Garcia-Zamora, Sharapov, and Lara Nunez.  It argues that this court lacks jurisdiction based on 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii).  As in these cases, the court finds that § 1252 does not oust the court of jurisdiction.  See Lara Nunez, 2026 WL 184195, at *2-3; Sharapov, 2026 WL 146668, at *2-3; Garcia-Zamora, 2025 WL 3642088, at *3; Anirudh, 2025 WL 3527528, at *2-4.  Section 1252(g) does not apply because Villa Delgado is not challenging the government's commencement of removal proceedings but rather the legality of his detention.  See 8 U.S.C. § 1252(g); see also Anirudh, 2025 WL 3527528, at *3.  Section 1252(b)(9) does not bar review of his claims because the provision does not bar the court from reviewing issues collateral to the removal process.  See 8 U.S.C. § 1252(b)(9); see also Anirudh, 2025 WL 3527528, at *3.  Finally, Section 1252(a)(2)(B)(ii) does not strip the court of the power to adjudicate this matter because Petitioner is not challenging a discretionary decision to deny him bond but rather the

6

government's legal position that no bond hearing is required. Anirudh, 2025 WL 3527528, at *3.

Accordingly, for the reasons more fully stated in Anirudh, the court has jurisdiction. Anirudh, 2025 WL 3527528, at *2-4.

IV

The government argues that the petition also fails on the merits. As in the hundreds of previous cases, including Anirudh, Garcia-Zamora, Sharapov, and Lara Nunez, it asserts that under § 1225(b)(2)(A), Villa Delgado qualifies as an alien who is "applicant for admission" and thus subject to mandatory detention until a removal proceeding for him has concluded. See Lara Nunez, 2026 WL 184195, at *3; Sharapov, 2026 WL 146668, at *3; Garcia-Zamora, 2025 WL 3642088, at *3-4; Anirudh, 2025 WL 3527528, at *4-5. The government's position is without merit.

Section 1225(b)(2)(A) proceedings require mandatory detention while a noncitizen's removal proceedings are pending and the noncitizen may be released only "for urgent humanitarian reasons or significant public benefit." Jennings, 583 U.S. at 288. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that the person is: (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). These are separate requirements, all of which

7

must be met for Section 1225(b)(2)(A) to apply.  See Anirudh, 2025 WL 3527528, at *5.

As more fully explained in Anirudh, this court rejects the government's interpretation of § 1225(b)(2)(A) that conflates "applicant for admission" and "seeking admission" under Matter of Yajure Hurtado.  29 I&N Dec. at 222-24; Anirudh, 2025 WL 3527528, at *5; see also Sharapov, 2026 WL 146668, at *3.  This interpretation disregards the plain meaning of Section 1225(b)(2)(A) and violates the rule against surplusage of statutory language.  Anirudh, 2025 WL 3527528, at *5.  The language "seeking admission" in § 1225(b)(2)(A) references only noncitizens who are just arriving or have recently arrived in the country.  Id.

At the time of his arrest in January 2026, Petitioner had been present in this country for over three years and was not at that point "seeking admission," that is seeking "lawful entry," into the United States.  See 8 U.S.C. § 1101(a)(13)(A); Anirudh, 2025 WL 3527528, at *5.

Section 1226(a), in contrast to Section 1225, establishes a discretionary detention framework for noncitizens already in the country who are arrested and detained "[o]n a warrant issued by the Attorney General."  8 U.S.C. § 1226(a); see also Anirudh, 2025 WL 3527528, at *5.  It allows noncitizens subject to removal proceedings to be released on conditional

8

parole. 8 U.S.C. § 1226(a)(2)(B); see also Gomes v. Hyde, No. 25-11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). The framework entitles noncitizens to a bond hearing at the outset of any detention. See 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Petitioner entered the country on December 3, 2022. He was shortly thereafter apprehended and released a day later on discretionary parole. Since 2022, he has resided in the country. The detention of noncitizens like Petitioner who have been long-present in the United States is governed by the discretionary framework of § 1226(a).

Villa Delgado appears to have been initially paroled into the country under 8 U.S.C. § 1182(d)(5) which is granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." Id. § 1182(d)(5)(A); see Sharapov, 2026 WL 146668, at *3. As in Sharapov and Lara Nunez, the court concludes that being released on parole under this provision does not impact his right to habeas relief. Lara Nunez, 2026 WL 184195, at *3; Sharapov, 2026 WL 146668, at *3. In factually similar cases within this district, three of my colleagues found that noncitizens, who were paroled under § 1182(d)(5), were illegally detained without a bond hearing. See Moreno Ramirez v. Jamison, No. 25-7346, 2026 WL 196474, at *7 (E.D. Pa. Jan. 26, 2026) (Leeson, J.); Francois v. Noem, No. 25-7334, 2026 WL 27565, at *3 (E.D. Pa. Jan. 5, 2026) (Sanchez, J.); Rios Porras

9

v. O'Neill, No. 25-6801, 2025 WL 3708900, at *1 (E.D. Pa. Dec. 22, 2025) (Beetlestone, C.J.).  Additionally, courts around the country have also found noncitizens who were paroled under § 1182(d)(5) are not subject to mandatory detention if they have been residing within the country for years.  See Francois, 2026 WL 27565, at *3.

      Petitioner's detention without the opportunity for a bond hearing violates the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.  Since his mandatory detention violates federal law, the court need not address his claims that the bond regulations, due process, or the Administrative Procedure Act, 5 U.S.C. §§ 701 et. seq., have been violated.

V

      The court will issue a writ of habeas corpus requiring that Respondents release Petitioner because his mandatory detention violates the Immigration and Nationality Act.  The court also declares his current detention unlawful.